Good morning, Your Honors. May it please the Court, my name is Min Seok Han from Kellogg Hansen. I'm representing Appellant J. Hymas. I'd like to reserve time for rebuttal. U.S. Fish and Wildlife Service has not met the formidable burden that it bears in claiming that a post-litigation adoption of a new policy moots Mr. Hymas' claim. The new policy is ambiguous at best, was only two weeks old when the motion was filed, and is not subject to any procedural safeguards that would constrain the service from amending it or abandoning it in the future in light of the, given the history of arbitrary conduct of the service, the District Court's dismissal solely relying on the new policy should be reversed. The new policy does not show that the service will stop the long-standing practice of awarding cooperative agreements to the same set of incumbents in McNary and Umatilla refugees. On its face, it does quite the opposite. While it promises an open and competitive process... So in that, to that degree, it is different from what was operating earlier, because there was no bid process earlier. The generally applicable regulations of Department of the Interior and also Fish and Wildlife Service's own policies that apply to all cooperative agreement awards, they encourage and expect competition and require... In fact, the original complaint was that there weren't, he kept asking to make a bid, and they didn't have a bid process. The official at the refugee local office said they will do the competitive bidding process, and later in early 2013, the higher officials came in and said they don't do competitive bidding process. So this, in so far as it's very clear about the fact that there's going to be a competitive process, is changing what happened on the ground earlier. Yes, to the extent that they say they will now follow an open and competitive process, there's a change. However, it's really ambiguous because the new policy also declares that service will not follow the Department of Interior's regulations and policies that require objective merit-based evaluation of all applications. It says what the service now calls cooperative agriculture agreement is, quote, not a financial assistant award and is not subject to the regulations at Title 2 CFR 200. That's the regulation that requires a public notice and a merit review process. So, and instead, the new policy allows each refugee to come up with its own set of criteria to use in evaluating applications, one of which may be, quote, experience in the type of agriculture opportunity posted, especially personal experience on refugee lands or comparable land, end quote. In practice, this policy will allow for the past practice to continue only under another name. And the government here provides no facts supporting that the new policy makes absolutely clear that the complained behavior here could not reasonably be expected to recur. The policy has only a prospective effect only for future awards. In McNary and others, the current procurement contracts may be extended until 2020. The claims court and the district court have both looked at mutinous. Is any of the analysis that those courts gave relevant? It's very relevant. The claims court made a determination that the selection process in 2012, 13, 14 were arbitrarian and capricious. They made mutinous analysis as well. The claims court did not, the policy was adopted in August 2017. Neither of them had benefit of that. The district court concluded that the new policy mooted the claim, and from which we are now on appeal. Right. I had a question also about the relationship between the 2014 and the 2015 bidding process. It seems to me that the way the district court looked at this was that 2015 was just kind of a reaffirmation of what had already been done in 2014. But I found that confusing because it seemed to me that the current agreements, when they sent those letters, the current agreements were terminated after the harvest of the 2014 So it's a product of very interesting procedural history of this case. So the current procurement contract that are in place in McNary and Umatilla Refugees were granted through a procurement process during the period when the claims court injunction was effective. And that injunction was vacated by the Federal Circuit saying that the relationship here was cooperative agreement and the service had a statutory authority to do so. So the contracts that are in effect right now was granted using the legal instrument of procurement contract, and we're not seeking to set aside those contracts right now because the procurement process was used only because of the permanent injunction. So I'm still confused. It seems to me that the that solicitation of the 2015 crop season bid mooted the claim for bid preparation costs from the previous years because I guess they understood it to not require any additional preparation. What he did in 2014 just carried forward so he would have incurred those costs anyway. That's what I understood the district court to be saying, and I'm not really sure that I follow your answer to my question. So this is about the bid preparation costs that he incurred in preparing the 2013 and 2014 bids. Correct. And so why? What's wrong with what the district court said that that just carried? He would have incurred those same costs anyway for 2015. Normally if there is a cancellation of an award and the re-solicitation of the same project would moot a bid preparation cost claim incurred in the initial award. So is this the same project? But it's not because... Okay, that's what I'm trying to get at. The new procurement contract process was for the 2015 farming season. So by the time the so-called corrective action took place, the 2012, 13, 14... It wasn't for the 2014. I thought they vacated all the earlier ones and it was for the... It may have been for a future season, but it was with regard to the old contracts. The old contracts awarded in 2013, there were four one-year contracts that had been performed and then expired. I understand. Those don't count, but there there was no bidding process. There's a problem there. But the underlying theory of Mr. Hymas's bid preparation cost claim is that there was a breach of implied promise that his bid would be fairly and honestly considered. But there was no bid in 2013. They didn't take one. Mr. Hymas submitted his bid in 2013 and 2014. It was a piece of paper, a very short piece of paper. And actually, to be sure, the bid is nothing more than a statement of interest and as evidenced by other bids provided by the incumbent farmers here in this case. Well first of all, just to clarify, none of this matters to whether the case remains alive if we conclude that the 2017 state policy does not move to case perspective. That's correct. APA claim piece and then bid preparation claim piece are two different issues. And the bid preparation piece only matters for the survival of the case if the first one doesn't work. Correct. And Mr. Hymas incurred in excess of $5,000 preparing his 2013 bids and then 2014 bids. It's part of the district court record in docket number 16-2. What I don't understand, I'll say what I don't understand, is that the complaint, the second complaint, does seem to contest the 2015 farming contracts. But now you're saying you're not contesting them. Yeah, that was one of the counts and then the district court dismissed it as on jurisdictional grounds and we're not appealing that piece of judgment. There was an interlocutory appeal back and forth between the district court and 9th Circuit, but here for this purpose that piece is not. So we're only dealing with the pre-2015 bid preparation costs on that part of the case? Yes, that's correct. Okay. Tell me something, if the case, I mean the case isn't moved, wouldn't he at least have to amend his complaint to clarify what aspects of the new policy he's still complaining about? Because it's not, I mean, at first, as I said before, there does seem to be a competitive bid process now and there wasn't before. Also, there may be at this point be some track record as to what's actually happened under it. It's kind of odd because we keep circling as the case continues. Life goes on, too, and we keep circling back in terms of what the case, what the factual underpinnings for the case are. With respect to whether Mr. Jimenez would challenge the 2017 policy, I think that's a different issue. I think there may be an issue whether the policy is, the issue is right. He has to be challenging something in the 2017 policy or because otherwise prospective relief is totally useless. But you're saying, you're saying that the 2017 policy isn't sufficiently sure to continue. That's correct. But for that purpose, it doesn't really make any difference that the 2017 policy still seems to have a preference. Yes, because one of the objective criteria is that the new policy says. Yes, but on your theory that if he's not challenging the 2017 policy, then what difference does it make if the 2017 policy does or doesn't still have that carry forward? Because the regulations and policies that are above the 2017 policy require objective evaluation based on the merits and then public notice. So whether the refugee violated those Department of Internal Regulations and Policies and Title 2 of CFR Part 200, whether the service violated those laws still remains a live case in controversy. Can I ask two questions? One factual and one legal. Do you have a case where a plaintiff can recover bid costs even though the agency didn't make a solicitation? We do not, but no case cited by appellees stands for a proposition that there has to be a claim to lie. So Mr. Hymas's claim is based on a theory that there was implied promise that was breached, and that's exactly what happened here. While the service did not post a formal bid notice in 2013, the refugee official promised Mr. Hymas repeatedly that he could prepare his bid, especially for those empty croplands that none of the other incumbent farmers were willing to farm. And then we come around to 2014. He does incur costs, and their argument is that by 2015, the work that he did and the cost was absorbed, not wasted. But they were not, they were wasted, because the 2014 farming season beads. It was over. The 2014 crap had been brought in and the agreement terminated. Yes. Back to the mootness question on the prospectively. It strikes me that your argument, and I don't know if you saw the reports at all of the argument a week or two ago in the case, but it's kind of a similar situation. I mean, I understand that what you had there was a statutory change, but the question is whether if this, one of the questions that seemed to be the subject of your argument is that if the statutory change was not complete and there is still something that that's relating to what they were complaining about, whether that goes forward or not. So I'm wondering whether, I don't know if we should wait for that case, but it's not dissimilar in terms of what it seems to me you're saying here is the relevance of the 2017. The fact that the 2017 regulation does not disavow the preference, that seems to be one of your stronger arguments about why the two, why there's not, why it's not moot. There is some similarity between the two nine-circuit case law that makes the distinction between legislation and policy documents or other regulations. So I don't think there's any need to wait for a decision of the Supreme Court on New York. You looked at the briefing and in New York State Rifle, no one's attacking, no one's drawing the further extension that it could be voluntary, voluntary cessation could qualify even absent legislative intervention. I cannot make that representation here, but I can reserve the remainder of my time. You may do that. You have about a minute. May it please the court. The court should affirm the dismissal because this seven-year-old challenge to expired contracts under obsolete policies has become moot. Back in 2013. I want to ask you about the 2017 policy. To me it has two problems that caused me to wonder whether there's mootness here. The first is that there's no rulemaking. It's just a policy. So presumably it could be changed next week if someone wanted to change it, right? That is true. Agencies always revise the, retain the authority to revise their own policies. It's harder if they're done by rulemaking because then you'd have to go through another rulemaking and explain the need for the change or the reason for the change and so on. But this is sort of, they can change it back. And the other, I guess the other concern I have is it does seem to preserve the preference by listing as the first objective criterion, whether you have personal experience on this, basically either this land or comparable land. So it seems to kind of continue in a way the preference for the incumbents. What is your comment about that? No, Your Honor, there is no longer a preference. There are, under the new policy, there are objective scoring criteria and one of the relevant considerations, not surprisingly, is the offeror's relevant experience. Well, experience in the type of agricultural opportunity posed. That sounds awfully like incumbency. Well, Your Honor, the whole purpose of evaluating a candidate is, in part, past performance is always a part of that. Especially personal experience in NWRS lands, which seems to be experienced not only with growing these kinds of crops on this kind of land, but this particular kind of cooperative system. Yes, indeed. And under the old policy, under the old Refuge Manual, you didn't have a competitive process. There was a priority system. If the incumbent... Well, it's sort of competitive in name, it seems to me. I mean, I guess that's the question, whether the new policy is truly competitive. If someone comes in and says, you know, I've grown, I don't know what they grow, but I've grown potatoes for 42 years and I use these practices and I'm fantastic. And somebody else says, well, I've grown potatoes, but I've done it here. And so I have personal experience on these lands. It seems to me to build in that incumbent preference. No, Your Honor, there is no preference. It is just one of many relevant considerations. But it's also true, and this is, to me, even a bigger problem, that it doesn't say that these... It says objective criteria may vary depending on the needs and objectives of the NWRS lands. We will post the objective criteria. As far as this is concerned, you could post objective criteria, which could be that you were the prior person subject to the contract. That would be a rejected criteria. There's nothing in this rule that precludes that. Your Honor, that is not what the policy says, because the policy calls for open competition. Right. It calls for objective applicant scoring, which is considering all the circumstances, not simply... No, it doesn't say that. It says objective criteria, and it says they're gonna post the objective criteria. And I don't understand what would preclude them from objecting the same objective criteria they were using before. They weren't not objective. They were very objective. Your Honor, there's no evidence that the service is doing that, first and foremost. Well, we're not up to that, are we? Secondly, this is just like the American Diabetes Association case, which this court recently decided and was the subject of our 28-J letter, where the agency revoked a policy, and two years later, by the time it came to this court, the policy had been well established by that point, and the court held that use of the revoked policy was not reasonably expected to occur. But that's very situation dependent. And what's concerning here is not only that the whole thing could be changed tomorrow, but also that within it, if not the actual importance of incumbency, it allows for it. It says it'll vary depending on what we decide, and we'll let you know whenever we post a notice, so that they can post the notice next week, again, without even changing the policy, that says being the incumbent is one of the objective criteria. They haven't yet, but there's nothing to prevent them from doing that. So I don't see why it moots the matter. Okay. Well, Your Honor, there's two pieces to this. One is the concern that Your Honor raised, that there could be violations of agency policies in the future under the new policy, or something arbitrary. What's a violation? Why is that a violation of the policy? It allows for it. It says the objective criteria may vary depending on the needs and objectives of the lands, and we'll let you know when we post the notice what they are. It's not a violation. They could say incumbency if they wanted to. And there's no challenge to either the new policy itself or any... There have been scores, Your Honor, scores... No, but the question is whether the new policy moots the... Because... Means that the old problems can't occur. Well, what were those problems? Let's talk about them, because the problem, as Mr. Hymas defined it, was that there was an old priority system that gave priority to incumbents, and the agency created that policy because there were policy reasons for doing it at the time. And Mr. Hymas did not qualify for that priority status, and so he challenged the agency's reliance on that priority system under the Refuge Manual. That has been revoked. It is gone. What has been revoked? What's that? Pardon? What is the that? The old Refuge Manual provisions that established the priority system for awarding cooperative agreements, that has been unambiguously, unequivocally revoked. Refuge Management specifically include the priorities for incumbents? I'm sorry, Your Honor? Does the Refuge Management policy have in writing the preference for incumbents? Yes, it's in the record, Your Honor. There's an old Refuge Manual, which is around 150 or so in the appendix, and there was... There's no practice separate and apart from the policy provisions that were in place. It's my, I guess, two questions, because Judge Graber's first questions are the ones that I can't get past either. But as a threshold question, you're not asking for a hold for the Supreme Court case, the Heard Second Amendment case, are you? No, Your Honor. Okay, so then, in terms of looking at the language of the 2017, you're drawing a distinction between priority, preference, and experience. Those seem to all allow for incumbents to get an advantage. But the question of past experience is not a violation of any agency policy. The only thing that was alleged... But that's supposed to be litigated. That's the mayor's question. Yeah. Mike, my question, legally, it seems like your best case is American Diabetes. And in that case, they distinguish cases that look, to me, to be on point here, pronounced Fiker. But yet, in your brief, this is the question I have for you legally. You say at the end, well, the difference is that, quote, federal agencies retain authority and discretion to revise their own agency policies. That's right. And those cases... Those are just localities. I mean, we've never said we trust the federal government more than we trust local entities. I would think... That's not our point, Your Honor. Our point is that, in those cases, there were violations of a constitutional or statutory dimension. And agencies of any level do not have authority to amend the Constitution or to... Or to be arbitrary and capricious. That's the problem. Yeah. And I guess I would ask about American Diabetes, and I may be misremembering that, but didn't the Army, in that case, go through the rulemaking and change a regulation, as opposed to just putting out a policy? I mean, there were memoranda also, but didn't they also put out a new regulation? Your Honor, I don't believe there was actual formal notice and comment. The way it normally works in the military is they will promulgate a memorandum that establishes their procedures, and that is exactly what the... Well, there was a memorandum. I thought there was a... I may be wrong about that. It has the force of a regulation. How easily could the agency decide, we're not gonna continue this way? Would there be any public input before they could change their mind? Your Honor, the agency has the discretion to review their policies, and I would give a compliment to Mr. Hymas for shining a light on that. But... In the analysis, though, it is relevant whether the government admits that it was prior wrong in the brief, you were categorical, you're not admitting. Now, the first time I've seen in the record here is your oral compliment to him today, but that's part of the calculation. That there was a better way to do it, but it was nothing unlawful about what was done before. There was an old policy, which was set up for reasons that I can go into, but are not really... And how much did the Court of Federal Claims have to do with the alteration? Is it distinct from... I mean, you had a... Nothing, Your Honor. The policy review did not commence until after the agency won in the federal circuit. And there was a desire to take lessons learned from the experience and reevaluate in a constructive way, was their policy in keeping with the way they wanted to do business. The American Diabetes case stresses that the policy change was evidenced by language that is broad in scope and unequivocal in tone. The new policy unequivocally renounces the previously challenged prohibition on care, and it now provides the opposite. That's what's missing here. No, Your Honor. The new policy on every single page of the new policy, on the bottom of the page, it says, we have revoked and replaced all of the old policy provisions. But as to the challenged complaint about the priority for incumbents, there is nothing in the policy that precludes a priority for incumbents. Well, let's... Here's the key point. We've touched on this a few times, Your Honor, and I just want this to be clear. This is an allegation of a violation of agency policies. And those agency policies that were allegedly violated no longer exist here. And there is a completely new system that has been adopted. There have been scores of new cooperative agreements. Many, many of those... I've dealt with that with open to priority. But that... And it hasn't been implemented as to these fields. But that is a policy judgment. That is not an APA claim. If someone doesn't like incumbents getting awards... I mean, in the government contracting world, incumbents get a lot of business. It's not, in and of itself, a violation of any law, policy, or procedure. The only thing that matters here, Your Honor, there's no separate practice, separate and apart, from the policies that are required to be followed. And the new policy provides for an open, competitive process. You may prevail. The trouble is, the new policy also allows you tomorrow to change it. And therefore, Mr. Hymas will be in this sort of Kafkaesque world he's been in since 2012. Well, he knows where to sue if the agency were to violate that policy. Well, he has sued. The question is to continue to the merits in this case. And we've got arguments that go to the merits. That's beside the point for today's discussion. But there is nothing left. The contracts, the underlying contracts, which I need to touch on this point, the assertion was made that there was different work associated with the 2015 contracts. One of the letters, at least, said that the 2014 agreements would terminate with the harvesting of the 2014 crop. Am I mistaken about that? Yes, Your Honor. All of the 2014 agreements that were terminated were multi year contracts that were three or five years in duration. And pursuant to the claims court's then operative injunction, the agency complied with that But do you have ER 387 to 92? I thought they stated that the agreements will terminate after the harvest of the 2014 crop. That's right, because that's what the claims court ordered. Okay. But those underlying agreements had a duration of three to five years. Right. But they were terminated after the 2014 crop. Which was already in progress. Okay. But if that was true, then starting in 2015, there would be different agreements. At least that's an implication that is permissible. No, Your Honor. The actual cooperative farming agreements are in the record. They are three to five years in duration. They are not separate agreements every year. Okay. You're saying two separate things. One is, yes, you acknowledge they were terminated at the end of the 2014 crop harvest. Yes. And then you said, well, that doesn't matter because they looked longer than that. But it seems to me that basically at this stage of the proceedings, it seems to me that there's at least an implication that the 2015 bid was for something different. No, Your Honor. Same parcels, same... Same parcels, different conditions potentially from year to year. There's no allegation of that, Your Honor. This is... These... Well, they're alleged to be separate. They're alleged to be separate. No, Your Honor. In 20... Excuse me. The allegation in the complaint is that the selection in 2013, or excuse me, 2012, 2013, 2014, and 2015 was arbitrary and capricious. And we know that 2015 is out of the picture now. But I guess that a fair implication of that is that each year is separate for the process that the plaintiff wanted to go through. There was a 2013 process which was... Which Mr. Hymas asked to participate in and he was not permitted to. And in response to Judge Higginson's question before, the law is that unsolicited bids are not eligible for a claim for bid preparation cost. There is a claims court decision on this point from approximately 2005. I want to say Bowen or Brown. It's not in the briefs. I apologize for the imprecision. But there is case law on that point. And it all goes back to the issue of authority. In the implied-in-fact contract, what is implied-in-fact is from the government acting, going out to the public and soliciting bids. The implied-in-fact... Well, that's that implied-in-fact contract. But here we had a contract that wasn't really implied-in-fact. It was a fact, i.e. somebody in particular told him that there was going to be a bid process and that he should participate in it. But there never was. I know, but you're saying that the... That implied-in-fact contract was based on a affirmative bid process. This implied-in-fact contract was based on what he was specifically told. Your Honor, everything goes back to authority and there was no authorized request for bids put out for 2013. So you're... Oh, I'm sorry. So you're saying that they couldn't have put out a request for bids? They certainly could have. Right. And he was told they were going to repeatedly, repeatedly, repeatedly. If they had put out the request for bids, then the law would imply, in fact... I know, but I'm asking you why, yes, that is one circumstance in which it would imply an in-fact. But why would it also imply an in-fact from what he was repeatedly told? That would be a dramatic expansion of... It wouldn't be very dramatic. Your Honor, there is... I'm aware of no case law in the last 70 years in the government contracting realm where the implied-in-fact contract has been extended to a situation as Your Honor described. Thank you, counsel. You have exceeded your time. We asked a lot of questions, though, and Mr. Hahn, you have a minute left. Thank you. Thank you. Thank you, Your Honors. I'll make it brief. American Diabetes Association is distinguishable because the court found the new policy was unequivocal and was enshrined in the changes in Arby's regulation. And here, Mr. Hymas is not challenging the refugee manual. Refugee manual was restored after Mr. Hymas filed this lawsuit in 2013. And here, nothing in the record shows how this new policy would be applied. The government has provided no record or any sorts of cooperative agriculture agreement that was awarded pursuant to the new policy. What is the basis for your challenge? I mean, it's no longer the statute that was involved in the Court of Claims procedure because they decided that that doesn't apply. Presumably that's over with. So what are you... What's the basis for it? It is the arbitrary and Title 2 of CFR Part 200 that Department of the Interior adopted through 2 CFR 1402, which requires public notice and merit review process and Department of Interior's own policy, Part 505, Section 2, that strongly encourages and expects competition and also requires awards based on merits and through a, quote, independent objective evaluation. Mr. Hymas's claim under APA and Little Cucker Act remain justiciable. The district court's dismissal should be reversed. Thank you. Thank you, counsel. The case just argued is submitted and we appreciate the interesting arguments from both counsel. With that, we are adjourned for this morning's session.
judges: Graber, Berzon, Higginson